J-A07017-17

2017 PA Super 379

| | |
|---|---|
| DALE BOUCHON AND/OR MAHAMIA BOUCHON, INDIVIDUALLY AND/OR DALE BOUCHON ADMINISTRATOR OF THE ESTATE OF CHARLES BOUCHON A.K.A. CHUCKIE BOUCHON | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| CITIZEN CARE, INC., PARTNERS FOR QUALITY FOUNDATION, INC., PARTNERS FOR QUALITY, INC., LIFEWAYS D.B.A. EXCEPTIONAL ADVENTURES, ALLEGHENY CHILDREN'S INITIATIVE, INC., ERIC LINDEY, MARGARET (PEGGY) NOLAN, KOMLAVI (CLAUDE) (KOMLAIR) VIDZRO, DONALD DEMICHELE, PETRA MUSSI, CINDY KING, GROVE DEMMING, LYDIA TOOMEY, JESSICA DAVIS, JOSEPH A. MANDARINO, AND/OR ROBINSON EMS | |
| Appellees | No. 472 WDA 2016 |

Appeal from the Order Entered March 30, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at Docket No: GD-15-014481

BEFORE: OLSON, STABILE, and STRASSBURGER, JJ.[*]

OPINION BY STABILE, J.:                    **FILED DECEMBER 06, 2017**

Dale Bouchon ("Appellant"), as administrator of the estate of his

brother, Charles Bouchon, appeals from the March 30, 2016 order entered in

_____

[*] Retired Senior Judge assigned to the Superior Court.

the Court of Common Pleas of Allegheny County sustaining Appellees'[1] preliminary objections and dismissing Appellant's amended complaint with prejudice. For the reasons that follow, we affirm in part, reverse in part, and remand.

Based on a review of the record, the facts of the case can be summarized as follows. Charles Bouchon ("Charles") was a mentally challenged occupant of a group home owned and operated by Citizen Care. At some point during a pizza dinner at the group home on August 24, 2013, Charles was unsupervised. At that time, Charles placed uncut pizza and some quantity of a soft drink into his mouth and choked. Efforts by staff to help Charles were unsuccessful as were efforts by Robinson EMS personnel who were summoned. Charles was transported to the hospital where he died.

Appellant initiated an action against Citizen Care by writ of summons filed on July 1, 2015. By order entered July 17, 2015, the trial court acknowledged the parties' agreement to resolve Citizen Care's motion for

---

[1] Appellees, who shall be referred to collectively as "Appellees," include Citizen Care, Inc., Partners for Quality, Partners for Quality, Inc., Lifeways d.b.a. Exceptional Adventure, Allegheny Children's Initiative, Inc. (collectively "Citizen Care"), Eric Lindey ("Lindey"), Margaret (Peggy) Nolan ("Nolan"), Komlavi (Claude) (Komlair) Vidzro ("Vidzro"), Donald DeMichele ("DeMichele"), Petra Mussi ("Mussi"), Cindy King ("King"), Grove Demming ("Demming"), Lydia Toomey ("Toomey"), Jessica Davis ("Davis") (collectively "Employees"), Joseph Mandarino ("Mandarino"), and Robinson EMS.

- 2 -

protective order and granted the parties the opportunity to conduct pre-complaint discovery. On August 18 and 19, 2015, Appellant conducted a number of videotaped depositions. According to Appellee Citizen Care, "Appellant obtained over sixteen (16) hours of deposition testimony during the course of his pre-Complaint discovery and received hundreds of pages of documents and records." Citizen Care Brief at 7.

On August 24, 2015, Appellant filed a separate action by writ of summons against all Appellees. By order entered October 19, 2015, the cases were consolidated.

Prior to consolidation, on September 16, 2015, Appellant filed a 61-page, 233-paragraph complaint against all Appellees.[2] The action was brought by "Dale Bouchon and/or Mahalia Bouchon, Individually and/or Dale Bouchon Administrator of the Estate of Charles Bouchon A.K.A. Chuckie Bouchon." Paragraphs 1 through 183 purported to identify the parties and summarize the underlying facts. Paragraphs 184 through 223, Styled "Count One – Negligence," included allegations by Appellant against "Citizen Care, Inc., et al," and set forth allegations such as those included in Paragraph 219, which provided as follows:

> The foregoing incident and all of the injuries and damages set forth hereinafter/heretofore sustained by [Charles] are the direct

_____

[2] We discuss the allegations of the initial complaint so that a comparison can be made with the amended complaint under review in this appeal and so that our discussion of the pleading issues can be considered in context.

and proximate result of the negligent, grossly negligent conduct, careless, and/or reckless manner and/or wanton and/or willful misconduct and/or outrageous and/or intentional conduct in which the Defendant(s) operated and/or actions and inactions, said negligence, carelessness, and/or recklessness includes, but is not limited to, the following . . . .

Complaint, 9/16/15, at ¶ 219. Paragraph 219 continued, listing 56 general allegations of conduct ostensibly attributable to all Appellees. *Id.* at ¶ 219 a-ddd. Damages claimed were "in an amount in excess of $6,000,000.00 plus interest and costs." *Id.* at 56.

Count Two, styled "Wrongful Death," brought on behalf of Appellant and against "Citizen Care, Inc. et al.," asserted claims for pecuniary loss suffered by Charles' survivors, *i.e.*, his brother and sister, Dale and Mahalia, by reason of his death, *id.* at ¶ 227, and again demanded judgment in an amount in excess of $6,000,000.00. *Id.* at 58.

Count Three, styled "Survival Claim," again brought on behalf of Appellant and against "Citizen Care, Inc. et al.," alleged that Appellees were liable for damages in excess of $6,000,000.00 caused by the "aforesaid acts of negligence, recklessness, outrageousness, and/or intentional conduct" resulting in pain and suffering, loss of earning power and other income, enjoyment of life, and "punitive damages." *Id.* at 59.

All Appellees filed preliminary objections to the complaint. Citizen Care, on behalf of itself and all other parties, with the exception of Nolan, Vidzro, Toomey and Robinson EMS, filed preliminary objections requesting that the complaint be stricken in whole or in part for the following reasons:

     a. Plaintiffs lack capacity to sue because . . . they are incapacitated persons as that term is defined by the Pennsylvania Rules of Civil Procedure;

     b. Except for Citizen Care, Inc., Plaintiffs have not alleged any wrongful conduct on the part of defendants;

     c. Plaintiffs have pled general allegations of negligence;

     d. Plaintiffs have made irrelevant averments regarding drug and alcohol testing, criminal background checks and physical examinations;

     e. Plaintiffs cannot maintain actions in their individual capacities;

     f. Plaintiffs have no claim for punitive damages;

     g. Plaintiffs' complaint does not conform to the Pennsylvania Rules of Civil Procedure and contains scandalous and impertinent material and

     h. Plaintiffs' claim for damages is improper.

Citizen Care Preliminary Objections, 10/26/16, at ¶ 8.

Nolan and Toomey filed preliminary objections asking the trial court to dismiss the complaint for the following reasons:

     a. Plaintiffs' Complaint fails to allege facts necessary to support a finding of gross negligence, as required in light of the qualified immunity under the Mental Health and Mental Retardation Act ["MHMR Act"], 50 Pa.C.S.A § 4603B.

     b. As to Defendant Toomey, plaintiff fails to allege any facts even hinting at wrongful conduct on her behalf.

     c. While generally pleading a claim for punitive damages, there is nothing in the complaint that identifies any basis for such a claim against the individual defendants. Pennsylvania law only permits punitive damages in rare cases where there is outrageous conduct. Plaintiffs' allegations against the individual defendants fail to come anywhere close to the level

- 5 -

> necessary to support a claim for punitive damages. Punitive damages cannot be recovered in a wrongful death claim.

Nolan/Toomey Preliminary Objections, 10/29/15, at ¶ 7.

Alternatively, Nolan and Toomey requested that if the court did not dismiss the complaint in its entirety, Appellant should be required to file a more specific pleading in a concise and summary form as required by Pennsylvania Rule of Civil Procedure 1019. *Id.* at ¶ 8. They further requested that Appellant be directed to comply with the specificity requirements of Rule 1028(a)(3) and to plead claims against each individual specifically. They also requested a more specific pleading for numerous additional paragraphs of the complaint and asked that other specific paragraphs be stricken as "scandalous and impertinent." *Id.* at ¶¶ 10, 11. Finally, Nolan and Toomey requested that the *ad damnum* clause be stricken for impermissibly seeking damages in excess of $6,000,000, contrary to Rule 1020(b).

Vidzro filed preliminary objections duplicative of those filed by Citizen Care and Nolan and Toomey. Vidzro Preliminary Objections, 11/10/15.

Robinson EMS filed preliminary objections seeking to have the complaint dismissed for legal insufficiency claiming that:

a. Robinson EMS was entitled to immunity under the Emergency Medical Services System Act (the "EMSS Act"), which it claims only permits suit against an emergency medical service provider for gross negligence or willful misconduct (¶¶ 11-20);

b. Dale and Mahalia Bouchon may not seek damages individually (¶¶21-31, 40-42);

c. Any claims for negligence are duplicative of the wrongful death and survival actions (¶¶ 32-34);

d. The complaint fails for lack of specificity as required under Rule 1028(a)(3) as it does not contain facts for plaintiffs to recover, and is not specific enough for an opposing party to be able to prepare a defense. Further, Plaintiffs have not pled separate counts against each individual defendant (¶¶ 35-39); and

e. The complaint was not properly verified (¶¶ 43-51).

Robinson EMS Preliminary Objections, 11/9/15.

Additionally, Robinson EMS requested that certain of the damages claimed under the wrongful death act be stricken as not permissible; that the claim for punitive damages be stricken as legally insufficient; that Appellant's prayer for an apology and for Appellees to agree to change the way they do business be stricken as scandalous and impertinent; that the demand for $6,000,000.00 be stricken; and that a multitude of the complaint's paragraphs alleging only vague, catch-all allegations of negligence be stricken for failure to satisfy Rule 1019 and failure to apprise Robinson EMS of the conduct alleged to be improper or negligent. *Id.*

In response to the multitude of preliminary objections filed by Appellees, Appellant filed answers denying all objections by simply stating the preliminary objections are conclusions of law to which no response is necessary. To the extent a response was required, Appellant denied the averments or, alternatively, claimed the complaint was a matter of record

that speaks for itself. Answer to Preliminary Objections, 11/13/16, 11/16/16, and 11/20/16.

Following argument, the trial court issued a December 3, 2015 order providing:

> The preliminary objections based on lack of capacity to sue are overruled. The preliminary objections of Robinson EMS are sustained, and plaintiff is granted leave to amend. The preliminary objections of all defendants for a more specific complaint and to strike irrelevant allegations are granted, however, plaintiff is given leave to file an amended complaint. **The amended complaint must include individual and specific allegations as to each defendant in separate counts.** Plaintiff is granted leave to file an amended complaint within 45 days. Judge Friedman retains jurisdiction in the event preliminary objections are raised to the amended complaint.

Trial Court Order, 12/3/15, at 1 (emphasis added).

On January 18, 2016, Appellant filed an amended complaint, this time spanning 55 pages and including 193 paragraphs, the first 97 of which identified the parties and set forth factual allegations as well as various and numerous conclusory allegations.[3] In Count One, styled "Negligence,"

---

[3] By way of example, Paragraph 59 alleges:

> The actions or inactions of Defendant Citizen Care, Inc. and/or its corporate parent and/or partners and all employees named herein and/or other workers were negligent, grossly negligent and/or reckless in light of the actual and/or constructive knowledge of the extreme danger and risk of choking, pain, fear, panic, anxiety, and death in failing to adhere to Charles Bouchon's [individual service plan ("ISP")] by negligently, knowingly, or acting with conscious disregard or reckless indifference in leaving Charles Bouchon alone with uncut food,

*(Footnote Continued Next Page)*

brought only in the name of Appellant "Dale Bouchon as Administrator of the Estate of Charles Bouchon" (sometimes "the Estate"), Appellant asserted claims against only the Citizen Care entities. The count included a total of 38 paragraphs, 29 of which were devoted to setting forth general[4] and redundant[5] statements regarding breach of duties alleged to be owed to

*(Footnote Continued)* ―――――――――――

>     and in failing to perform or to train its employees and servants to provide proper maneuvers to remove the lodged bolus of food.

Appellant's Amended Complaint at ¶ 59.

[4] By way of example, in Paragraph 100, Appellant alleges that "[o]n August 24, 2013 and at all times relevant and material hereto, Defendants owed to the decedent a duty to have its employees under such control that it could have prevented injuries to Decedent." Similarly, in Paragraph 106, Appellant asserts that "at all times relevant and material hereto, Citizens Care Inc., and/or all employees stated in paragraph 77 owed to the Decedent the duty to have policies and procedures in place to be sure its employees were qualified to follow the regulations that govern its operations and actions that were to be and/or should have been performed." The employees identified in Paragraph 77 include Lindey, DeMichele, Mussi, King, Demming, Toomey and Davis.

[5] Again, in Paragraph 100 Appellant averred that Citizen Care owed a duty to Charles to have its employees under such control that it could have prevented injuries to Charles. In Paragraph 103 through 105, he claimed that Citizen Care owed a duty to Charles to hire only employees who did their jobs in a reasonably prudent manner, those who would followed regulations, and those who did not have a history of requiring disciplinary measures.

Similarly, in Paragraph 106, Appellant averred that Citizen Care owed Charles a duty to have policies and procedures in place to be sure its employees were qualified and to follow regulations that govern its operations. In Paragraphs 109 through 120, Appellant averred that Citizen Care owed Charles a duty to have and follow written policies and
*(Footnote Continued Next Page)*

Charles by Citizen Care. In addition, paragraph 131 contained 51 subparagraphs setting forth general statements of conduct, ranging from negligence to recklessness, alleged to be actionable and committed by Citizen Care.[6] Amended Complaint at ¶ 131 a-yy. The amended complaint further alleged that "Citizen Care [is] vicariously liable for the negligent, reckless, outrageous, and grossly negligent actions of its corporate subsidiaries and/or partner corporations or entities." *Id.* at ¶ 21.

In Count Two, Appellant set forth claims of negligence against all Employees. In the event they were acting outside their employment, then those claims were asserted against them in their individual capacities. Paragraph 153 includes 26 subparagraphs alleging actionable conduct on the part of these individuals. *Id.* at ¶ 153 a-w, ww-yy. Appellant again sets forth duties allegedly owed to Charles and claims conduct in general and redundant terms that ranges from negligent to reckless.

_(Footnote Continued)_ ────────────

procedures, *inter alia*, to protect Charles; to ensure employees were trained to perform proper maneuvers for unblocking food from a choking person; to require employees to review ISPs; to ensure employees had the experience, training and licensing to perform the job and keep Charles safe; to discover non-reporting of incidents; and to discover danger.

[6] Appellant pled at paragraph 131 that damages sustained by the Decedent were the "direct and proximate result of the negligent, careless, and/or reckless manner and/or wanton and/or willful misconduct and/or outrageous and/or intentional conduct in which the Defendant(s) operated and/or actions and inactions, said negligence, carelessness, and/or recklessness includes but is not limited to the following . . . "

In Count Four,[7] styled "Negligence," Appellant sets forth allegations against Robinson EMS and/or Joseph Mandarino, including 19 subparagraphs of alleged actionable conduct on the part of these parties without differentiating any of this alleged misconduct as between them. *Id.* at ¶ 182 a-r, yy.

Count Three, styled "Damages," incorporates Paragraphs 1 through 186 of the amended complaint and asserts that Appellant is bringing an action on behalf of the Estate pursuant to Pennsylvania's wrongful death and survival statutes, 42 Pa. C.S.A. §§ 8301, 8302. *Id.* at ¶ 188. Appellant purports to bring this "Damages" claim against all Appellees, individually, and by way of their agents, servants, workmen, employees and/or ostensible agents. *Id.* Appellant then alleges all conduct by these Appellees was performed with reckless indifference to the welfare of Charles. *Id.* The Estate further avers that the aforesaid acts all constituted outrageous conduct resulting in an unreasonable risk of bodily harm to Charles warranting an award of punitive damages against all Appellees. *Id.* at ¶189. The Estate claims damages, including but not limited to economic damages, pain and suffering, and punitive damages. *Id.* at ¶ 190. The amended complaint was verified by counsel, as the initial complaint had been. All Appellees again filed preliminary objections.

---

[7] Count Four precedes Count Three in the amended complaint.

Predictably, Citizen Care—on behalf of itself and all individual parties, excepting Nolan, Vidzro, and Toomey—filed preliminary objections that assailed Appellant for willfully ignoring the trial court's directive to set forth individual and specific allegations against each individual party in separate counts. Preliminary Objections, 2/9/16. While the amended complaint attempted in some measure to set forth separate counts as between entities and individuals, the amended complaint nonetheless did not set forth counts against each Appellee as instructed by the trial court. *Id.* In addition, Appellees claimed once again that, absent sufficient averments that they engaged in gross negligence or incompetence, they were entitled to immunity under § 4603 of the MHMR Act. They further contended that any attempt to plead gross negligence or incompetence in the amended complaint would introduce new causes of action barred by the statute of limitations.[8] Alternatively, these parties requested that the amended complaint be stricken in whole or in part because Appellant:

   a. failed to properly plead a wrongful death or survival action;

   b. failed to properly maintain a cause of action for spoliation;

   c. based claims on events that occurred after Charles' death;

---

[8] We note that the statute of limitations is an affirmative defense properly raised in new matter rather than by preliminary objection. *See* Pa.R.C.P. 1030.

d. made irrelevant allegations regarding alcohol testing, criminal background checks, Vidzro's disciplinary history, and an alleged failure to inspect Charles' home;

e. alleged scandalous and improper allegations that defendants "killed" Charles;

f. included Count Three, which claimed nothing more than damages;

g. sought punitive damages;

h. asserted general allegations of negligence;

i. provided a defective verification signed by counsel; and

j. failed to amend the caption to delete Dale and Mahalia Bouchon in their individual capacities.

Citizen Care Preliminary Objections, 2/9/16, at ¶ 16. Finally, Appellees alleged that Appellant's counsel engaged in obdurate and vexatious conduct as defined under 42 Pa.C.S.A. §2503(7), warranting the imposition of sanctions in the amount of $8,500.00. *Id.* at ¶¶ 17-21.

Nolan, Toomey and Vidzro also filed preliminary objections assailing Appellant for not setting forth specific claims against each party as directed by the trial court in its December 3, 2015 order. They too sought dismissal of the amended complaint upon several bases, including:

a. as barred under § 4603B of the MHMR Act;

b. failing to allege any facts hinting at any wrongful conduct by Toomey,

c. pleading a claim for punitive damages without any basis against any individual party, and

   d. pleading a punitive damages claim in a wrongful death action.

Nolan, Toomey and Vidzro Preliminary Objections, 1/29/16, at ¶ 9.

Alternatively, these parties requested that the court direct Appellant to file a more specific pleading with specific allegations in separate counts against each party; that the court strike numerous identified allegations and Count Two in its entirety; and that the court strike scandalous and impertinent matter. *Id.* at ¶¶ 12-16. Finally, they objected to the amended complaint naming Dale and Mahalia Bouchon individually as plaintiffs, and to the verification provided by counsel. *Id.* at 17-18.

Robinson EMS renewed its preliminary objections seeking dismissal of the action, claiming immunity under the EMSS Act, absent averments demonstrating gross negligence or willful misconduct. Robinson EMS Preliminary Objections, 2/10/16 at ¶¶ 16-26. Noting that the trial court previously sustained its preliminary objections but permitted Appellant to file an amended complaint, Robinson EMS pointed out that the amended complaint, unlike the first complaint, now asserted only vicarious liability against Robinson EMS for the actions of Robinson EMS's "employee," Joseph A. Mandarino. Citing pre-complaint deposition testimony, Robinson EMS alleged that Mandarino was not its employee, but rather the chairperson of the board of directors for Partners for Quality, Inc. *Id.* at ¶¶ 27-31.

Robinson EMS also asked the court to strike several general allegations of negligence for violating Pa.R.C.P. 1019, including the use of the phrase

"includes, but is not limited to" in describing the manner in which Appellant alleged negligence. *Id.* at ¶¶ 32-36. Robinson EMS also took issue with counsel's verification in violation of Pa.R.C.P. 1024. *Id.* at ¶¶ 37-45.

Lastly, Robinson EMS attacked Count Three ("Damages") on several bases. First, the count attempted to plead a cause of action for "Damages," which is not a cognizable cause of action. Second, the count improperly attempted to assert claims for wrongful death and survival. Third, the count sought damages under the wrongful death act to which the Appellant is not entitled. Specifically, Appellant demanded judgment including "loss of services according to proof" and "loss of economic support according to proof" despite the lack of a beneficiary eligible to claim those damages. Finally, the punitive damage claim was legally insufficient. *Id.* at ¶¶ 46-63.

The trial court scheduled argument on Appellees' preliminary objections. On February 29, 2016—prior to argument and 31 days after the first preliminary objections were filed to the amended complaint, Appellant filed a second amended complaint but did not seek leave of court or consent of counsel before doing so. Appellees again filed preliminary objections, noting the deficiencies in the pleading and the fact that Appellant did not seek leave of court or consent of counsel before filing the pleading. Appellees requested that the trial court dismiss the action or, in the alternative, order Appellant to file a proper pleading. In addition, Citizen

Care filed a motion to strike the Second Amended Complaint as untimely under Pa.R.C.P. 1028(c)(1). Citizen Care Motion to Strike, 3/11/16.

The trial court conducted a hearing and issued its order on March 30, 2016, granting Citizen Care's motion to strike the second amended complaint, sustaining Appellees' preliminary objections to Appellant's amended complaint, denying leave to amend, and dismissing the action with prejudice. The trial court explained:

> We note that [Appellant has] disregarded the prior order of this court, dated December 3, 2015, which was intended to facilitate the drafting of an understandable and sufficiently pled complaint under the Rules of Court.
>
> We also note that leave to amend further was denied because there is no amendment that can convert the underlying averments of negligence into gross negligence, which is a pleading requirement here for all defendants with the possible exception of Robinson EMS. The Second Amended Complaint (which was stricken because it was filed without leave of court or the consent of opposing counsel) corrects none of the deficiencies as to Robinson EMS, and only demonstrates the inability of [Appellant] to properly plead [his] various claims against each [Appellee]. Neither the [c]ourt nor counsel should be required to spend any more time addressing [Appellant's] unsuccessful attempts to state in a clear and concise manner the duties each [Appellee] had to [Appellant's] decedent and how those duties were violated by each.
>
> It is further ordered that the Oral Motion of [Appellees] for Sanctions in the form of counsel fees is denied without prejudice to re-assert this claim in the future.

Trial Court Order, 3/30/16, at 1-2.

Appellant filed a timely appeal from the March 30, 2016 order. The trial court directed Appellant to file a concise statement of errors complained

- 16 -

of on appeal in accordance with Pa.R.A.P. 1925(b). On April 8, 2016, Appellant filed a nine-page statement that presented ten alleged errors, eight of which included sub-parts. The trial court issued its Rule 1925(a) opinion on September 14, 2016, explaining that the reasons for dismissal of Appellant's complaint were set forth in its March 30, 2016 order and that no further opinion would be filed.

In its brief filed with this Court, Appellant asks us to consider the following five issues:

A. Whether the trial court erred in sustaining [Appellees'] demurrers where taking the well-pleaded facts as true, [Appellant] demonstrated a valid claim for which relief can be granted to the Estate of Charles Bouchon?

B. Whether the trial court erred by striking the Second Amended Complaint that was filed twenty days after the last set of preliminary objections and the objecting party lacked standing to raise a timing issue?

C. Whether the trial court erred in sustaining "all preliminary objections to the First Amended Complaint" when the Complaint was proper in all or most respects rather than striking paragraphs or removing [Appellees] when the Complaint properly alleged negligence against all [Appellees]?

D. Whether the trial court erred in ruling that [Appellant] failed to comply with an order of court when [Appellant] correctly addressed the cognizable portions of the order by filing the First Amended Complaint?

E. Whether the trial court erred in ruling that [Appellant] is not permitted to amend the Complaint because there is no amendment that can amount to "gross negligence" which is a factual determination to be made by a jury?

Appellant's Brief at 5-6.

Before addressing Appellant's issues, we note that our ability to conduct review is somewhat confounded by the very broad manner in which Appellant and the trial court addressed the multitude of preliminary objections raised by Appellees to both the initial and amended complaints.[9] Much of this, we assume, is explained by the trial court's attempt to address in a succinct manner the morass of issues created by Appellant's inability to draft a pleading that Appellees could answer. When confronted a second time with preliminary objections, the trial court, with an understandable and palpable degree of frustration due to Appellant's failure to conform to basic rules of pleading, dismissed this action.

Our ability to address Appellant's issues is made more difficult by the trial court's March 30, 2016 order, submitted in lieu of a more detailed 1925(a) opinion, that summarily dismissed this action with prejudice. The order disposed of all issues with three general statements. First, that Appellant disregarded the trial court's December 3, 2015 order to draft an understandable and sufficiently pled complaint compliant with the rules of court. Second, without saying so, but in obvious response to the immunity defenses raised by Appellees, that Appellant was unable to convert

---

[9] By our count, Appellees filed more than twenty preliminary objections to each of these complaints, many of which were not duplicative of each other and many of which are not addressed in this Opinion. As noted below, the fact we have not addressed some of the objections is not a reflection of this Court's determination that they are without merit.

averments of negligence into gross negligence.  Third, that Appellant was not entitled to another attempt to file a complaint that set forth allegations in a clear and concise manner after demonstrating the inability to do so twice before.  Despite the generalizations contained in Appellant's issues and the trial court's order, we find that given the fundamental errors in the pleadings and the succinct reasons given by the trial court, appellate review is not impeded.  Therefore, we will proceed to address Appellant's issues.

With respect to demurrers and our review of a trial court's order sustaining preliminary objections, this Court has explained:

> A preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient. Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer.  All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true.

> In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred.  The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven.  **This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion.  When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt.  Thus, the question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible.  Where a doubt exists as to whether a demurrer**

**should be sustained, this doubt should be resolved in favor of overruling it.**

*Hill v. Slippery Rock Univ.*, 138 A.3d 673, 676–77 (Pa. Super. 2016) (citation omitted) (emphasis added).

Appellant first contends that the trial court erred in sustaining Appellees' preliminary objections where, "taking the well-pleaded facts as true, [Appellant] demonstrated a valid claim for which relief can be granted to the Estate of Charles Bouchon[.]" Appellant's Brief at 5. As stated, while we can appreciate the trial court's reasons for granting Appellees' demurrers and striking off a complaint that can be most politely described as prolix, we also recognize that we are charged with determining whether Pennsylvania law could provide a tort recovery under the facts alleged in Appellant's amended complaint. Although not necessarily an exhaustive listing, we offer the following as examples of allegations from Appellant's amended complaint that, if proven, collectively might support a recovery in this wrongful death and survival action.

Appellant initiated this suit in his capacity as administrator of the estate of his brother Charles. Amended Complaint at ¶ 4. As of August 24, 2013, Charles was a resident at Citizen Care's facility in Allegheny County. *Id.* at ¶ 5. Citizen Care offered residential and other services to persons in Allegheny County, including Charles. *Id.* at ¶ 14. Robinson EMS offered medical and/or EMT services to persons in Allegheny County, including Charles. *Id.* at ¶ 16. Margaret Nolan and Komlavi Vidzro were acting in the

course and scope of their employment with Citizen Care on August 24, 2013. *Id.* at ¶ 19.

As of August 24, 2013, Citizen Care had an individual service plan (ISP) specifically created for Charles, identifying him as a person at risk of choking if left alone while eating and/or not being provided bite-sized food. *Id.* at ¶¶ 37, 40. While unsupervised, Charles began to choke on uncut pizza. *Id.* at ¶ 52. Employees Nolan and Vidzro failed to perform adequate maneuvers to clear Charles' throat. *Id.* at ¶ 60. Charles died of "affixiation of acute aspiration on food, upper airway blocked by bolus of food."[10] *Id.* at ¶ 65.

Citizen Care owed a duty of care to Charles. *Id.* at ¶¶ 111, 121. Citizen Care failed to take proper precautions so that Charles would not choke. *Id.* at ¶ 131 e, q, ee, ll. As a result of Citizen Care's breach of duty, Charles suffered harm and resultant damages. *Id.* at ¶ 132.

Upon arrival at Citizen Care on August 24, 2013, Robinson EMS failed to obtain full and accurate information regarding Charles' condition before attempting to administer care to him. *Id.* at ¶ 170. Robinson EMS failed to perform appropriate and adequate maneuvers to clear Charles' throat. *Id.* at ¶ 172. Robison EMS owed a duty to Charles to render reasonable care and a duty not to cause him harm. *Id.* at ¶¶ 177, 181. Robinson EMS was

_____

[10] We suspect Appellant is alleging asphyxiation as the cause of death.

grossly negligent in failing to attempt to check for a bolus, failing to attempt to clear Charles' throat, and in failing to perform or attempt to perform the Heimlich maneuver on Charles, a choking victim. *Id.* at ¶¶ 178, 179, 182 j, l. As a result of the acts and omissions of Robinson EMS, Charles suffered harm and resultant damages. *Id.* at ¶ 183.

Based upon the above averments, we conclude Appellant has alleged sufficient facts that, if ultimately proven, could permit recovery. We now address whether the trial court erred in granting Appellees' demurrers to dismiss the amended complaint in its entirety.

All Appellees, with the exception of Robinson EMS, demurred to the amended complaint on the basis that they are immune from suit under § 4603 of the MHMR Act. That section provides, in pertinent part:

> No person and no governmental or recognized nonprofit health or welfare organization or agency shall be held civilly or criminally liable for any diagnosis, opinion, report or anything done pursuant to the provisions of this act if he acted in good faith and not falsely, corruptly, maliciously or without reasonable cause; **provided however, that causes of action based upon gross negligence or incompetence shall not be affected by the immunities granted by this section**.

50 P.S. § 4603 (emphasis added). Although the trial court in its March 30, 2016 order did not specifically reference the immunity demurrer asserted by Appellees, it presumably granted it. The court stated that leave to amend was denied because no amendment could convert the underlying averments of negligence into gross negligence, which it believed was a pleading requirement for all Appellees with the possible exception of Robinson EMS.

- 22 -

Limiting ourselves, as we must, to the facts pled in the amended complaint, it is not clear whether any Appellees are governmental or recognized nonprofit health or welfare organizations or agencies entitled to immunity under this statute. Further, it is not clear from either the arguments presented or the facts pled in the amended complaint whether any of the individuals or entities were engaged in any activities to which the immunity provisions of the MHMR Act would apply.

It also is not clear whether Appellant failed to plead sufficient facts to establish gross negligence or incompetence by Appellees. The amended complaint avers that all Appellees failed to employ appropriate medical and/or trained staff, Amended Complaint at ¶ 26; were aware of the specialized needs of residents but had only a skeleton crew to care for them, *id.* at ¶ 27; ignored complaints by employees regarding staffing needs, *id.* at ¶ 29, 36; ignored pleas for increased resources, *id.* at ¶ 30; forced employees to work long hours, including overtime that impaired their ability to provide adequate care, *id.* at ¶ 31; allowed Charles to eat or access food without supervision, despite specific knowledge of the choking hazard, *id.* at ¶ 33; consciously disregarded Charles' ISP despite being warned of the high probability of choking to death, *id.* at ¶ 42; knew that, on the day in question, Charles was hungry, *id.* at ¶ 46; knew pizza was Charles' favorite food but refused to provide him food for an extended period of time, *id.* at ¶ 48; denied Charles food for an extended period of time to punish him for

spilling his drink, thereby increasing the probability Charles would eat too fast and choke when eventually provided food, *id.* at ¶ 49; proceeded to give Charles food and failed to stay with him to keep him safe despite knowing the requirements of his ISP, *id.* at ¶ 51; failed to contact EMS and/or paramedics within a reasonable time, *id.* at ¶ 55; failed to provide appropriate information to responders to prevent the Charles' death, *id.* at ¶ 57; failed to provide employees the proper training to remove the lodged bolus of food, *id.* at ¶ 59; failed to provide training for assisting a choking individual, *id.* at ¶ 62; continued to employ Vidzro despite at least eleven disciplinary infractions, *id.* at ¶ 91; and failed to have a working defibrillator available when medical providers arrived at the scene, *id.* at ¶ 96.

Thus, as will be discussed, while Appellant has failed to set forth the material averments of his amended complaint in a concise and summary fashion, from sifting through the amended complaint, it appears there are sufficient factual averments that could constitute gross negligence, rendering the grant of an immunity demurrer improper. The trial court, therefore, erred in granting a demurrer based on immunity under the MHMR Act.

Robinson EMS also demurred to the amended complaint claiming immunity under the EMSS Act. Section 8151(2) of the EMSS Act provides, in pertinent part, as follows:

> No EMS agency, EMS agency medical director or EMS provider
> who in good faith attempts to render or facilitate emergency
> medical care authorized by this chapter shall be liable for civil

> damages as a result of an act or omission, absent a showing of gross negligence or willful misconduct.

35 Pa. C.S.A. § 8151(2). From the trial court's March 30, 2016 order, it does not appear that the trial court granted Robinson's demurrer. The trial court commented that gross negligence was "a pleading requirement here for all defendants with the possible exception of Robinson EMS." Trial Court Order, 3/30/16, at 2. However, to the contrary, pleading gross negligence under both the MHMR Act and the EMSS Act is one avenue by which a plaintiff may overcome statutory immunity under both statutes. While these statutes both preclude immunity for gross negligence, they differ in that the MHMR Act also precludes immunity for incompetence, while the EMSS Act also precludes immunity for willful misconduct. Nonetheless, to the extent the trial court's order can be construed as granting Robinson EMS's demurrer upon the immunity conferred by the EMSS Act, we cannot say that it is clear that Appellant did not sufficiently aver facts that could establish gross negligence on the part of Robinson EMS. Appellant avers that Robinson EMS acted recklessly and in a grossly negligent fashion by failing to obtain full and accurate information prior to attempting to administer CPR to the Decedent. Amended Complaint at ¶¶ 170, 180. Appellant alleges that Robinson EMS also failed to administer the Heimlich maneuver, *id.* at ¶179, and that, instead of first clearing Charles' throat, began chest

compressions with additional breaths, forcing the food bolus further into Charles' airway, leading to his death. *Id.* at ¶¶ 171, 172, 178, 180.[11] While we cannot say that these averments suffice to allege willful misconduct, Appellant has alleged fundamental mistakes on the part of Robinson EMS that could constitute gross negligence. Therefore, we find the trial court erred to the extent it granted Robinson EMS's demurrer based on immunity under the EMSS Act.[12]

In his second issue, Appellant contends the trial court erred by striking his second amended complaint filed 20 days after the last set of preliminary objections and argues the objecting party lacked standing to raise this timing issue. We find no need to address the timing issue, as our review of the second amended complaint leads us to conclude that the trial court did not err in striking this complaint. We agree with the trial court's observation that this complaint fails also to properly plead its various claims against each Appellee. Trial Court Order, 3/30/16, at 2. Because the trial court struck the second amended complaint on procedural grounds and we find that the

---

[11] Since these averments arguably bear upon the standard of care for providing medical care, proof as to whether gross negligence was committed may require expert testimony. However, that issue is not presently before this Court.

[12] Alleging facts and proving facts are not the same. Although Appellant may survive a demurrer at this time, our decision in no manner is meant to offer any opinion as to the merits of any gross negligence claims.

complaint suffers from many of the same infirmities as the amended complaint, as discussed in detail, *infra*, we decline to address this issue further.

In his third issue, Appellant contends the trial court erred in sustaining all preliminary objections to his amended complaint because the complaint was proper in all respects. In his fourth issue, he asserts the trial court erred in ruling he failed to comply with the trial court's order, claiming he addressed the "cognizable" portions of the order in his amended complaint. As these issues are intertwined, we address them together.[13]

Initially, we must state that we find it disingenuous at best for Appellant to claim that his amended complaint was proper in all or most respects and that he addressed the "cognizable" portions of the trial court's order in his amended complaint. The pleading defects in the amended complaint are many. Appellant's inability to set forth, as ordered, the simple facts of this case (as he has done in his brief to this Court), unencumbered in almost every paragraph by every contingency of liability, and in a manner that enables each Appellee to discern the alleged tortious conduct attributable to that party, raises the temerity of these arguments to an

---

[13] It is not necessary for us to address Appellant's fifth and final issue, that the trial court would not permit further amendment to plead gross negligence, as we previously held with regard to Appellant's first issue that the amended complaint pled sufficient allegations for gross negligence.

incomprehensible level. We are hard-pressed to understand Appellant's inability to specifically identify parties and their roles in this matter when counsel had the benefit of some 16 to 20 hours of pre-complaint discovery. Further, we cannot fathom how Appellant can suggest that he addressed the "cognizable" portions of the trial court's order when he failed to set forth specific allegations as to each Appellee in separate counts as the trial court unambiguously ordered him to do.

While it is true that a complaint should not be dismissed without leave to amend unless, on the facts averred, the law can say with certainty no recovery is possible, *Hill, supra*, our Supreme Court has recognized that the "Rules of Civil Procedure are essential to the orderly administration and efficient functioning of the courts." *Womer v. Hilliker*, 908 A.2d 269, 276 (Pa. 2006)). "[W]e expect that litigants will adhere to procedural rules as written, and take a dim view of litigants who flout them." *Id.* (citing *Wood v. Garrett*, 46 A.2d 321, 323 (Pa. 1946)).

Rule of Civil Procedure 1019(a) requires that the material facts on which a cause of action or defense is based be stated in a concise and summary form. "[A] pleader must set forth concisely the facts upon which his cause of action is based. The complaint must not only apprise the defendant of the claim being asserted, but **it must also summarize the essential facts to support the claim**." *Donaldson v. Davidson Bros., Inc.*, 144 A.3d 93, 103 (Pa. Super. 2016) (emphasis in original). A

complaint also "must apprise the defendant of the nature and extent of the plaintiff's claim so that the defendant has notice of what the plaintiff intends to prove at trial and may prepare to meet such proof with his own evidence." ***Discover Bank v. Stucka***, 33 A.3d 82, 86-87 (Pa. Super. 2011) (citation omitted). Rule 1020 (a) permits a plaintiff to state more than one cause of action against a defendant, *but* each cause of action and any special damages related thereto must be stated in a separate count containing a demand for relief. While there is some authority that a single cause of action may be pled against two or more defendants who are alleged to be jointly and severally liable, that cannot be the case where the factual background underlying each defendant's liability is different. ***See General State Authority v. Lawrie and Green***, 356 A.2d 851, 854 (Pa. Cmwlth. 1976). With these basic principles in mind, we now address why we reject Appellant's contentions the amended complaint was proper in most respects and complied with the trial court's December 3, 2015 order.

At common law, an action for personal injury did not survive a person's death. To counter this, our legislature enacted a survival statute providing that "all causes of action or proceedings, real or personal, shall survive the death of a plaintiff." ***Salvadia v. Ashbrook***, 923 A.2d 436, 439 (Pa. Super. 2007) (citing 42 Pa.C.S.A. § 8302). All actions that survive the decedent, however, *must* be brought by or against the personal representative of the decedent's estate. ***Id.*** Likewise, Pennsylvania law

provides that an action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act, neglect, unlawful violence or negligence of another. 42 Pa.C.S.A. § 8301. This wrongful death action exists only for the benefit of a decedent's spouse, children or parents. *Id.* As with survival actions, an action for wrongful death may only be brought by the personal representative of a decedent for the benefit of those persons entitled by law to recover damages for the decedent's wrongful death. *Id.*; Pa.R.C.P. 2202.[14] Thus, an individual, even if he or she qualifies as a wrongful death beneficiary, may not institute an action individually on his or her own behalf. A decedent's personal representative must bring all causes of action that arise by virtue of the decedent's wrongful death. In short, attempts to assert causes of action to recover damages for the death of an individual caused by the wrongful act of another—other than those brought by a decedent's personal representative for wrongful death and/or survival—are not permitted.

Here, the initial complaint improperly identified Dale and Mahalia Bouchon individually as Plaintiffs, in addition to correctly identifying Dale as

---

[14] In addition, under Rule 2202(b), if no action for wrongful death has been brought within six months after a decedent's death, an action may be brought by the personal representative or any person entitled by law to recover damages in such action as trustee ad litem on behalf of all persons entitled to share in the damages.

the Administrator of Charles's estate. This error was corrected in the body of the amended complaint, but the caption still improperly referred to Dale and Mahalia individually as Plaintiffs. We presume this was mere oversight. However, in his amended complaint, Dale, as Administrator of the Charles' estate, alleged a single count of "Negligence" against Citizen Care, a single count of "Negligence" against individual Appellees, a single count of "Negligence" against Robinson EMS and/or Mandarino, and a fourth count entitled "Damages," in which he did not name any parties but averred, in a single paragraph, that this action was brought on behalf of Charles' estate under Pennsylvania's wrongful death and survival statutes. In this count, Appellant failed to identify those persons entitled to recover wrongful death damages. Appellant has failed to properly plead his wrongful death and survival actions in a number of significant ways.

First, it is impossible to tell whether Appellant's first three "Negligence" counts are wrongful death and/or survival actions. None of these counts identifies either cause of action. They merely assert negligence claims by Appellant as the Administrator of Charles's estate. If Appellant intended to assert negligence claims outside the wrongful death and survival statutes, these causes of action are clearly improper. If Appellant intended to plead any of these counts as wrongful death and/or survival actions, then Appellant violated Rule 1019(a), which requires specificity as to the nature of the claims. Second, Appellant's "Damages" count violated Rule 1020(a)

by appearing to plead both wrongful death and survival actions in the same count. Rule 1020(a) clearly directs that wrongful death and survival causes of action must be set forth in separate counts. Third, to the extent the "Damages" count can be considered a claim for wrongful death, Appellant has failed to comply with Rule 2204 in its entirety. Rule 2204 requires that the plaintiff "state the plaintiff's relationship to the decedent, the plaintiff's right to bring the action, the names and last known residence addresses of all persons entitled to recover damages, their relationship to the decedent and that the action was brought on their behalf." Pa.R.C.P. 2204. Finally, as Appellees correctly recognize, a count for "Damages" is not a cause of action.

We next conclude Appellant was in clear violation of the trial court's December 3, 2015 order with respect to his failure to set forth separate causes of action against each defendant. In his first count, Appellant names as defendants "Citizen Care, Inc. and/or Partners for Quality Foundation, Inc. and/or Partners for Quality, Inc. and/or Exceptional Adventures and/or Allegheny Children's Initiative," or, collectively, "Citizen Care, Inc." Paragraph 21 of the amended complaint avers that the "Defendants Citizen Care, Inc., are all vicariously liable for the negligent, reckless, outrageous, and grossly negligent actions of its corporate subsidiaries and/or partner

corporations or entities."[15] The paragraphs that constitute the first count, Paragraphs 98 through 135, including the 51 subparagraphs of Paragraph 131, speak collectively to the Citizen Care, Inc. entities without differentiating any conduct or claims as between or among them. Moreover, because Appellant groups these entities together and asserts that each is vicariously liable for the actions of each other's corporate subsidiaries, partner corporations or entities, it is impossible for any of these entities to discern for whom they are responsible or the conduct for which each entity is allegedly vicariously liable.

The averments contained within Paragraph 131 allege negligence, corporate negligence, and/or conduct for which a principal may be found to be vicariously liable. As pled, Appellant flatly violates Rule 1020(a), as this count attempts to assert several causes of action against numerous parties for conduct undefined as to each party named. Claims based upon negligence, corporate negligence, and vicarious liability are separate causes

_____

[15] Appellant's use of "vicarious liability" to describe conduct as between separate legal entities appears to be without precedent. Vicarious liability is a policy-based allocation of risk sometimes referred to as imputed negligence, which in its simplest form, is imposed by reason of some relation existing between two parties, such as in an employer-employee relationship. *See Estate of Denmark Ex. Rel. Hurst v. Williams*, 117 A.3d 300, 305 (Pa. Super. 2015). To hold an employer vicariously liable for the negligent acts of its employee, the acts must be committed "during the course of and within the scope of the employment." *Id.* (citation omitted). The amended complaint does not identify relationships between or among the various legal entities named that would impute the negligence of one to another.

of action.[16]  In addition, the summary manner in which Appellant named these entities, and alleged all causes of action against them in a single count, clearly violates the requirements of Rule 1019(a) to concisely state claims in a manner that advises a defendant of the claims asserted against him and enables him to prepare a proper defense.  At a minimum, each of these entities is entitled to be apprised of the capacity in which the entity is being sued in this action and to be informed of the specific conduct that Appellant believes is actionable as to each of them.

In his second count, Appellant alleges negligence against "Margaret (Peggy) Noonan and/or, Komlavi (Komlair) (Claude) Vidzro and/or Petra Mussi and/or Eric Lindey and/or Donald DeMichele and/or Grove Demming and/or Lydia Toomey and/or Jessica Davis."  Like Appellant's first count, this count encompasses Paragraphs 136 through 156, with Paragraph 153 containing 26 subparagraphs that allege the manner in which these individuals were either negligent, careless, or reckless, or engaged in wanton, willful, outrageous, or intentional conduct toward Charles.  Once again, this count fails to comply with Rules 1019(a) and 1020(a), as it is impossible for any of these named individuals to ascertain which allegations of conduct are directed to each of them.  Certainly, since it cannot be alleged that all of these parties committed the same conduct, Rule 1020(a)

---

[16] The argument also may be made that claims asserting negligence and intentional conduct likewise are separate causes of action.

requires—at a minimum—that separate causes of action be pled against all those who are not jointly and severally liable.

In his third count, Appellant names Robinson EMS and/or Joseph Mandarino as defendants. He alleges that Robinson EMS is a corporation and Mandarino is a competent adult.[17] Amended Complaint at ¶¶ 159, 160. Appellant then obfuscates who the parties are. Paragraph 164 pleads the "respective **employer(s)** of their respective employees, named in this Complaint are vicariously liable for the negligent, reckless, outrageous, and grossly negligent conduct of their/its respective employees." *Id.* at ¶ 164 (emphasis added). Appellant then pleads that "**Defendants Robinson EMS**, are all vicariously liable for the negligent, reckless, outrageous, and grossly negligent actions of its corporate subsidiaries and/or partner corporations or entities." *Id.* at ¶ 165 (emphasis added).

It is unclear whether the entity is "Robinson EMS," or multiple entities, since Appellant refers to "employer(s)," "Defendant Robinson EMS," and

---

[17] Robinson EMS also raised preliminary objections asserting that the third count should be dismissed because it incorrectly asserts that it is vicariously liable for Mandarino, as pre-complaint discovery revealed that Mandarino is the chairperson of the Board of Directors of Partners for Quality, and is not an employee of Robinson EMS. Since we cannot go outside the averments of the complaint filed, and this claim would require that we consider matters outside the complaint under review, we are precluded from addressing this objection at this time. Nonetheless, we remind counsel that counsel's signature upon a pleading certifies that the factual allegations have evidentiary support. Pa.R.C.P. 1023.1(c)(3). The filing of claims without such support may subject counsel to sanctions. *See* Pa.R.C.P. 1023.1 through 1023.4.

"Defendants Robinson EMS." ***Id.*** at ¶¶ 159, 164, 165, 166, 167, 168, 169, 171. While one might assume that the plural would refer to both parties named in the caption, "Robinson EMS and Joseph Mandarino," this assumption cannot be made, as Appellant also alleges that the Robinson EMS entities are all vicariously liable for their corporate subsidiaries and/or partner corporations or entities and their co-defendants. ***Id.*** at ¶¶ 165, 166.

In light of our previous discussion, we need not count the many ways that this pleading violates Rules 1019(a) and 1020(a). Nor do we once again have to explain the requirement to set forth separate causes of action under Rule 1020(a).

As for lack of specificity, we need only reference Paragraph 182 and its 18 subparagraphs as representative of how that paragraph and many others in this count violate Rules 1019(a) and 1020(a). Paragraph 182 alleges that Charles' injuries and damages were the proximate result of the "grossly negligent, careless, and/or reckless manner and/or wanton and/or willful misconduct and/or outrageous and/or intentional conduct in which the Defendant(s) operated and/or actions and inactions, said gross negligence, carelessness, and/or recklessness includes, but is not limited to . . ." Subparagraphs a through r and yy[18] then proceed to set forth in very general terms the wrongful manner in which the parties acted, so much so

---

[18] We assume the reference to "yy" is a typographical mistake.

that it is impossible to discern what conduct may be attributed to any of the parties. To be certain that this confusion is complete, Appellant's prayer for relief then demands judgment against all "Defendants."

The trial court unambiguously directed in its December 3, 2015 order that Appellant was to include individual and specific allegations as to each party in separate counts. Appellant's claim that its amended complaint was proper in all or most respects, or that he addressed the "cognizable" portions of the trial court's December 3, 2015 order, simply does not hold any weight. Appellant's violations of the basic pleading requirements under Rules 1019(a) and 1020(a) are astounding.

We agree with Appellees Nolan and Vidzro that, "[s]tripped of the hyperbole that pervaded each Complaint, the underlying facts were rather simple and non-dramatic." Brief of Appellees Nolan and Vidzro at 7. Most of Appellant's averments of the facts giving rise to this action are unnecessarily encumbered by conclusory and all-encompassing language. Despite the fact this case may be understood in very simple terms, this case has not even reached the point of having an answerable complaint, yet it has amassed a substantial certified record, as reflected by the reproduced record that itself exceeds 1,000 pages. The reason we are in this position is Appellant's seeming refusal, or inability, to draft a complaint that sets forth "in a concise and summary form" the material facts upon which his cause of action is based. Pa.R.C.P. 1019(a).

In summary, we are reversing the trial court's grant of demurrers, as it cannot be said with certainty that no recovery is possible based upon what we can discern are the averments of Appellant's amended complaint. **See Hill, supra.** We affirm fully the trial court's order dismissing the amended complaint for failure to present an understandable and sufficiently pled complaint under the rules of court. We reverse the trial court's order denying further leave to amend because we have found error in some of the reasons given for dismissing this action with prejudice. We, therefore, are remanding this matter to the trial court to afford Appellant the opportunity to plead his causes of action properly. In doing so, we are by no means suggesting that any of Appellees' remaining preliminary objections raised, but not addressed by the trial court or herein, are meritless. Appellant's counsel would be well advised to consider and take seriously the objections previously asserted. We are making clear that we have decided in this appeal only the five issues preserved and presented by Appellant before this Court.

Accordingly, we remand to the trial court with the directive that Appellant be given the opportunity, within 45 days of the date of this decision, to file an amended complaint in conformance with our rules of procedure, the directives of the trial court's December 3, 2015 order, and this decision. Further, should Appellant's counsel wish to avoid another set of preliminary objections and possible dismissal of this case, it is imperative

that any amended complaint clearly set forth proper causes of action and address the basic elements of any asserted cause of action identifying the proper parties against whom those claims might legitimately lie. In the event Appellant files an amended complaint following remand and that pleading does not comport with the procedural rules—including but not limited to Pennsylvania Rules of Civil Procedure 1019(a), 1020(a) and 2204, as well as the statutory requirements of 42 Pa.C.S.A. §§ 8301 and 8302, the trial court's December 3, 2015 order, and this decision, Appellees would be well within their rights to file preliminary objections again to have the trial court address those objections, or to seek the imposition of sanctions and counsel fees, a claim the trial court denied without prejudice to reassert in the future. *See* Trial Court Order, 3/30/16.

In sum, we affirm the trial court's December 3, 2015 order as to striking Appellant's second amended complaint and as to striking the amended complaint for lack of conformity with Rules 1019(a) and 1020(a). We reverse the order as to the grant of demurrers and dismissal of Appellant's amended complaint with prejudice. Further, we remand for further proceedings consistent with this decision.

Order affirmed in part and reversed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

- 39 -

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date:  12/6/17